# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**JESSICA CURELOP MILLER,**<br><br>　　　　　　　　Debtor | Chapter 11<br>Case No. 09-15324-FJB |

## MEMORANDUM OF DECISION AND ORDER
## ON MOTION OF THOMAS M. GRASSO
## FOR DISMISSAL OF CASE

**Background**

Thomas M. Grasso ("Grasso"), the movant in this motion to dismiss, is the defendant in an adversary proceeding commenced by Jessica Curelop Miller ("Miller") in connection with her chapter 11 bankruptcy case. In the adversary proceeding, Miller, acting as debtor-in-possession, seeks to recover certain property, alleged to consist of over $4,000,000 in cash and goods, she transferred to Grasso as part of their now terminated romantic relationship. With the present motion, Grasso implores this Court to dismiss not the adversary proceeding against him, but Miller's entire chapter 11 case, pursuant to 11 U.S.C. § 1112(b). Alternatively, Grasso asks that the Court abstain from hearing Miller's chapter 11 case, pursuant to 11 U.S.C. § 305(a).

This is not the first litigation between Grasso and Miller. In fact, at the heart of Grasso's motion is the dismissal of a prior civil action in the Massachusetts Superior Court in which Miller asserted against Grasso several causes of action, including fraud, conversion, and misrepresentation, to recover the property she transferred to him during their relationship. At Miller's request, the civil action was dismissed with prejudice. In the adversary proceeding, Miller now states that she dismissed the state court action under duress from Grasso's threats. Among the property she seeks to recover from Grasso in her adversary proceeding are the claims that were dismissed with prejudice in the Superior Court.

Whether the claims stated in Miller's adversary complaint will survive a motion to dismiss is not presented in this motion. The only issue at this juncture is whether the chapter 11 case can proceed. Based on the following analysis, the Court holds that it may.

**Discussion**

a.   *Standing*

As a preliminary matter, Miller argues that Grasso does not have standing to request dismissal of her bankruptcy case under § 1112(b) of the Bankruptcy Code ("§ 1112(b)"), which permits the court to dismiss a chapter 11 petition on request of a "party in interest."  11 U.S.C. § 1112(b)(1).  The issue of Grasso's standing under § 1112(b) is complicated but unnecessary to the disposition of Grasso's motion to dismiss.  Even if Grasso had standing to assert this motion, the motion would nevertheless fail on its merits.  The Court, therefore, does not decide the standing issue.  Instead, it assumes, for the sake of argument only, that Grasso has standing to assert this motion to dismiss.

b.   *Good Faith*

Grasso's principal argument in this motion is that Miller's chapter 11 filing was in bad faith and therefore should be dismissed under § 1112(b).  Bankruptcy Code § 1112(b)(1) provides in relevant part:

> on request of a party in interest, and after notice and a hearing . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).  Bankruptcy Code § 1112(b)(4) enumerates 16 non-exclusive examples of "cause" for conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4).  Lack of good faith in filing a chapter 11 petition is not included in this list.  *Id.*

Courts in the First Circuit have been reluctant to find that lack of good faith in filing a

chapter 11 petition is "cause" for dismissal under § 1112(b). *See Fields Station LLC v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner),* 490 F.3d 21, 24 (1st Cir. 2007); *In re Victoria Ltd. P'ship,* 187 B.R. 54, 61-62 (Bankr. D. Mass. 1995).[1] The Court need not determine whether bad faith constitutes cause for dismissal under § 1112(b), however, because Grasso has failed to make even a *prima facie* showing of bad faith. *See Capitol Food*, 490 F.3d at 24 (noting that even courts which have found a good faith filing requirement would demand that a movant under § 1112(b) first make a *prima facie* showing that the debtor filed its petition in bad faith).

1.      **Need for Chapter 11 Relief**

In support of his contention that Miller filed her chapter 11 petition in bad faith, Grasso makes four arguments. First, he argues that the filing has no legitimate purpose. While Grasso does not contest Miller's eligibility for chapter 11 relief, he does assert that Miller does not need chapter 11 relief.

It is well established that an important component of the good faith filing requirement is the debtor's need for chapter 11 relief. *See, e.g., Capitol Food,* 490 F.3d at 25; *In re Liberate Technologies,* 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004) ("The most conspicuous element of the good faith requirement is that the debtor need Chapter 11 relief.") "'A debtor need not be insolvent before filing a bankruptcy petition,' however, 'provided it is experiencing some type of financial distress.'" *Capitol Food,* 490 F.3d at 25 (quoting *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.),* 384 F.3d 108, 122 (3d Cir. 2004)).

Here, Miller's financial distress is plain from an examination of her schedules, the

---

1   One concern informing the First Circuit's reluctance to adopt the majority position in support of a *§ 1112(b)* good faith filing requirement is that "good faith" is too vague and amorphous a term to justify dismissal *ab initio* of a chapter 11 petition before the debtor has had a fair opportunity to propose and argue for the *bona fides* of its reorganization plan. *See Capitol Food,* 490 F.3d at 24.

accuracy of which the Court has no reason to doubt.  She is balance-sheet insolvent, her liabilities exceeding her assets by almost $3,000,000.  Additionally, her monthly expenses exceed her monthly income by over $5,000.  "Where the debtor is insolvent, a petition will almost invariably be consistent with the objectives of the bankruptcy laws." *Liberate Technologies,* 314 B.R. at 211.

Miller's balance-sheet insolvency and negative cash flow show a genuine need for the chapter 11 process, the objectives of which are to allow a debtor to alleviate financial distress, reorganize finances, and maximize the value of the bankruptcy estate for the benefit of creditors.  As noted by the Supreme Court, these objectives are achievable to no less an extent where the debtor, as here, is an individual rather than a business. *Toibb v. Radloff,* 501 U.S. 157, 163-64 (1991).  Miller's chapter 11 filing, therefore, does have a legitimate purpose.

### 2. No Illegitimate Purpose

In addition to contending that Miller has no legitimate purpose in filing for chapter 11 relief, Grasso further argues that her purpose is illegitimate, rendering her petition in bad faith. Grasso states that Miller's sole purpose in filing the chapter 11 petition was to undo the dismissal with prejudice of the state court action, which she seeks to accomplish through the adversary proceeding she has filed against him.  Grasso further states that "[a] filing for the sole or primary purpose of undoing the final judgment of a state court is one made in bad faith."

Grasso rests this legal proposition on *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Industrial Terminal, Inc.)*, 931 F.3d 222 (2d Cir. 1991), a decision from the Second Circuit Court of Appeals.[2]  Grasso quotes language from the case stating: "because bankruptcy

---

2   Grasso cites to two additional cases, but neither fully supports the proposition.  In one of these cases, the Fifth Circuit Court of Appeals reversed the judgment of the bankruptcy court that the debtor's petition was filed in bad faith, finding that the facts of the case "do not rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted[.]"  *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1073 (5th Cir. 1986).  The bankruptcy court based its finding of bad faith on remarks of the debtor's counsel indicating that the bankruptcy petition was filed to escape

4

filings must be made in good faith, an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally[.]" *Id.* at 228.  Contrary to what Grasso's carefully selected language implies, however, the *Cohoes* decision has less to do with the propriety of filing a chapter 11 petition with a purpose to launch a collateral attack on a state judgment and more to do with the unremarkable requirement of need for chapter 11 relief.  The omitted language immediately following Grasso's selected language turns out to contain the key to the court's holding: "the debtor must [only] have some intention of reorganizing."  *Id.*

In *Cohoes*, the court concluded that the debtor did not violate the good faith filing requirement, even though the debtor conceded that a collateral attack on a state judgment, alongside a desire to obtain respite from creditor demands and to reorganize, was one of its reasons for filing its chapter 11 case.  *Id.*  The court, in addition to finding that the collateral attack remained open to the debtor in the bankruptcy court, found that the debtor's financial distress was sufficient to support its good faith in filing its chapter 11 petition.  *Id.*

Like the debtor in *Cohoes*, Miller has a need for chapter 11 relief.  Thus, her filing does not run afoul of the limitation set forth in *Cohoes*.  Application of the *Cohoes* decision simply demonstrates that even if Miller did file her chapter 11 petition for the very purpose of maintaining the adversary proceeding against Grasso, this would not cause her to violate the good faith requirement.  Her genuine need for chapter 11 relief is sufficient.  Further, and as explained below, Grasso fails to convincingly argue that an outcome in the adversary

---

the necessity of posting a substantial bond in an ongoing state court proceeding.  *Id.* at 1071.  The Fifth Circuit's decision did not involve a finding of bad faith, nor did it deal with an attack on a final judgment of a state court.

In the other case cited by Grasso, the district court simply did not analyze the issue of whether the debtor's bankruptcy case was commenced in bad faith.  *Pacific Rim Invs., LLP v. Oriam, LLC (In re Pacific Rim Invs., LLP),* 243 B.R. 768, 772-73 (D. Colo. 2000).  The court's analysis was limited to whether, as a matter of law, a petition filed in bad faith was "cause" for dismissal, pursuant to 11 U.S.C. § 1112(b)*,* or for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1).  *Id.* at 771-73.  The district court did not review the bankruptcy court's factual findings, including that of bad faith filing, because the debtor did not provide the district court with a transcript of the bankruptcy proceedings.  *Id.* at 772-73.

proceeding in favor of Miller would amount to undoing the judgment on the state court action.

### 3. The *Rooker-Feldman* Doctrine

Grasso next argues that the adversary proceeding Miller filed against him is evidence of bad faith as to the entire chapter 11 case because the adversary proceeding violates the *Rooker-Feldman* doctrine. The Court need not decide whether this evidence is strong enough to warrant a finding of bad faith as to Miller's entire case because the *Rooker-Feldman* doctrine simply does not apply to the circumstances of the adversary proceeding.

Stated most concisely, the *Rooker-Feldman* doctrine precludes lower federal courts from acting as appellate courts reviewing state court judgments. *See, e.g., Heghmann v. Indorf (In re Heghmann),* 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004); *Hopkins v. Foothill Mt., Inc. (In re Hopkins),* 346 B.R. 294, 301 (Bankr. E.D.N.Y. 2006)*; In re Zambre,* 306 B.R. 428, 431 (Bankr. D.Mass. 2004). The doctrine is a narrow one, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The doctrine applies to bankruptcy courts as units of the federal district courts. *Heghmann,* 316 B.R. at 403.

The *Rooker-Feldman* doctrine is not applicable to Miller's adversary proceeding because Miller does not, as required by the doctrine, invite this Court's review and rejection of the state court judgment. *See Exxon Mobil,* 544 U.S. at 284. Miller's argument in the adversary proceeding is not that the state court judgment was incorrect. Rather, her argument is that the state court judgment is avoidable as a fraudulent transfer under § 548 of the Bankruptcy Code. 11 U.S.C. § 548. This Court's adjudication of Miller's § 548 fraudulent transfer claim, in which she alleges that her state court claims were fraudulently transferred through the agreement for entry of judgment in the action, does not amount to an appeal of the state court in violation of the *Rooker-Feldman* doctrine.

Contrary to Grasso's argument, this Court has jurisdiction over the claims that comprise Miller's adversary proceeding. Her assertion of these claims evinces no bad faith as to her chapter 11 petition.[3]

### 4. Mass. R. Civ. P. Rule 60(b)

Grasso finally argues that further evidence of Miller's bad faith in filing her chapter 11 petition was her decision to forego relief under the Massachusetts Rules of Civil Procedure in favor of filing an adversary proceeding in bankruptcy. Massachusetts Rule of Civil Procedure 60(b) allows a judge to relieve a party or legal representative from judgment on the grounds of "fraud . . . misrepresentation, or other misconduct of an adverse party." Mass. R. Civ. P. 60(b)(3). In Grasso's view, if Miller's dismissal of the state court action was really obtained as the result of duress from his threats, then Rule 60(b)—not a petition for relief under chapter 11—is the appropriate relief, and failure to pursue it is evidence of bad faith as to the bankruptcy petition.

Grasso's position, however, is untenable since it ignores Miller's need for chapter 11 relief. Setting aside the state court judgment would indeed succeed in adding value to the bankruptcy estate, but it would not by itself address Miller's need to alleviate financial stress and reorganize her finances. Rule 60(b) relief is not a substitute for chapter 11 relief. Even if Miller chose to avail herself of Rule 60(b), she would, given her need, still be entitled to file a chapter 11 petition. Therefore, failure to pursue Rule 60(b) relief is not cause to find that her chapter 11 filing was made in bad faith.

---

3   Grasso's argument under the doctrine of *res judicata* that the state court judgment bars Miller's adversary proceeding claims fails for a reason similar to that stated above with respect to the *Rooker-Feldman* doctrine: Miller's adversary proceeding claims are new and independent from her state court claims. Thus, Miller's assertion of the adversary proceeding claims in this Court does not amount to a relitigation of the state court claims. *See Aunyx Corp. v. Canon U.S.A., Inc.,* 978 F.2d 3, 6 (1st Cir. 1992).

7

c.  *Abstention*

As noted above, Grasso asks the Court, as an alternative to dismissal, to abstain from hearing Miller's Chapter 11 case, pursuant to § 305(a) of the Bankruptcy Code.  11 U.S.C. § 305(a).  Grasso, however, has not demonstrated that abstention would better serve "the interests of creditors and the debtor," as required by the statute.  11 U.S.C. § 305(a)(1).  Given Miller's clear need for chapter 11 relief, the extraordinary remedy of abstention is not appropriate.

### ORDER

Based on the foregoing, Grasso has failed to make even a *prima facie* showing of bad faith as to Mrs. Miller's chapter 11 petition.  Therefore, the motion to dismiss is hereby DENIED.

Date: October 16, 2009

_____
Frank J. Bailey
United States Bankruptcy Judge